# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

**GREATGIGZ SOLUTIONS, LLC,**

Plaintiff,

v.

**EAST TEXAS BORDER HEALTH
CLINIC d/b/a GENESIS PRIMECARE**,

Defendant.

**Case No. 2:21-cv-00370-JRG**

---

## DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT

---

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................1

I.      STATEMENT OF THE ISSUE.............................................................................2

II.     FACTUAL BACKGROUND ...................................................................................2

        A.      The Parties ..................................................................................................2

        B.      The Complaint .............................................................................................3

        C.      The Claims of the GGS Patents .................................................................3

                1.      The Asserted Claims of the '194, '864, and '000 Patents ............................4

                2.      The Asserted Claim of the '086 Patent..........................................................7

III.    LEGAL STANDARDS ...........................................................................................8

        A.      Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)..........................8

        B.      Legal Standard for Patent Eligibility Under 35 U.S.C. § 101.................................8

IV.     THE GGS PATENTS CLAIM SUBJECT-MATTER THAT IS
        UNPATENTABLE UNDER SECTION 101 ...........................................................9

        A.      The Asserted Claims Fail to Satisfy Step 1 of the *Alice* Test Because They
                Are Directed to Abstract Ideas.................................................................9

                1.      The Asserted Claims Are Closely Analogous To Those That Have
                        Been Previously Found to Be Directed To Abstract Ideas .......................11

                2.      The Asserted Claims Would Effectively Preempt the Field of Job
                        Scheduling and Searching...........................................................................15

                3.      The Asserted Claims Do Not Improve Computer Functionality,
                        But Instead Use Computers Only As A Tool..............................................19

                4.      The Asserted Claims Fail the Pen-and-Paper Test ...................................22

                5.      The Other Claims of the GGS Patents Are Equally Abstract ...................23

        B.      The Asserted Claims Fail Step 2 of the *Alice* Test ...............................24

i

V.      CONCLUSION.................................................................................................................29

## TABLE OF AUTHORITIES

### CASES

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)........................................................................24

*Alice Corp. Pty. v. CLS Bank International*,
    573 U.S. 208 (2014)........................................................................... *passim*

*American Well Corp. v. Teladoc, Inc.*,
    191 F. Supp. 3d 135 (D. Mass. 2016) ...................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................21

*Bilski v. Kappos*,
    561 U.S. 593 (2010)........................................................................8, 11

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014).................................................................8

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 907 (2020) ................................8

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011).................................................................22

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...........................................................11, 19

*First-Class Monitoring, LLC v. United Parcel Service of America, Inc.*,
    389 F. Supp. 3d 456 (E.D. Tex. 2019) .............................................................9

*Joao Bock Transaction Systems, LLC v. Fidelity National Information Services, Inc.*,
    122 F. Supp. 3d 1322 (M.D. Fla. 2015)........................................................2, 15

*Joao Bock Transaction Systems, LLC v. Jack Henry & Associates, Inc.*,
    76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015)............... 2, 14-16

*Joao Control & Monitoring Systems, LLC v. Tellular Corp.*,
    173 F. Supp. 3d 717 (N.D. Ill. 2016) ...........................................................15

*Lumen View Technology LLC v. Findthebest.com, Inc.*,
    984 F. Supp. 2d 189 (S.D.N.Y. 2013).........................................................14, 19

*Mayo Collaborative Services v. Prometheus Lab'ys, Inc.*,
    566 U.S. 66 (2012).............................................................................9

*NovaPlast Corp. v. Inplant, LLC*,
     No. 20-7396 (KM) (JBC), 2021 WL 389386 (D.N.J. Feb. 3, 2021) ...............................23

*P & RO Solutions Group, Inc. v. CiM Maintenance, Inc.*,
     273 F. Supp. 3d 699 (E.D. Tex. 2017) ..............................................................................12

*Procon Analytics, LLC v. Spireon, Inc.*,
     No. 3:19-cv-201, 2021 WL 1269081 (E.D. Tenn. Apr. 6, 2021) ......................................20

*PTP OneClick, LLC v. Avalara, Inc.*,
     413 F. Supp. 3d 1050 (W.D. Wash. 2019).................................................................. 22-23

*Realtime Data LLC v. Array Networks Inc.*,
     Nos. 17-0800-CFC CONSOLIDATED, 17-0925-CFC, 2021 WL 1752045 (D.
     Del. May 4, 2021) ......................................................................................................20, 21

*Repifi Vendor Logistics, Inc. v. Intellicentrics, Inc.*,
     No. 4:20-cv-448-SDJ, 2021 WL 1196271 (E.D. Tex. Mar. 30, 2021) ..................... *passim*

*Secured Mail Solutions LLC v. Universal Wilde*,
     873 F.3d 905 (Fed. Cir. 2017).............................................................................................8

*Simio LLC v. Flexsim Software Products, Inc.*,
     983 F.3d 1353 (Fed. Cir. 2020)..........................................................................................21

*SkillSurvey, Inc. v. Checkster LLC*,
     178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017) ....... *passim*

*Synopsys, Inc. v. Mentor Graphics Corp.*,
     839 F.3d 1138 (Fed. Cir. 2016)..........................................................................................27

*Ultramercial, Inc. v. Hulu, LLC*,
     772 F.3d 709 (Fed. Cir. 2014).............................................................................................8

*Walker Digital, LLC v. Google, Inc.*,
     66 F. Supp. 3d 501 (D. Del. 2014)........................................................................13, 18, 27

*Yu v. Apple Inc.*,
     1 F.4th 1040 (Fed. Cir. 2021) .................................................................................19, 25, 26

**STATUTES**

35 U.S.C. § 101........................................................................................................... *passim*

**RULES**

FED. R. CIV. P. 12(B)(6) ............................................................................................... 1, 7

## PRELIMINARY STATEMENT

Defendant East Texas Border Health Clinic d/b/a Genesis Primecare ("Genesis")

respectfully moves to dismiss the Complaint for patent infringement filed by Plaintiff GreatGigz

Solutions, LLC ("GreatGigz") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Complaint fails to state a claim for relief because the patents that GreatGigz asserts are

directed to abstract ideas that are ineligible for patent protection under 35 U.S.C. § 101.

The GreatGigz patents impermissibly claim fundamental economic practices relating to

job searching and scheduling, which are implemented using conventional computer components

in conventional ways.  The claims asserted against Genesis use computers as a tool to automate

processes that have been well-known for millennia:  connecting potential job applicants with

prospective employees, scheduling appointments, and communicating about jobs.  Anyone who

has ever used a calendar to schedule a doctor's appointment or worked with a headhunter is

intimately familiar with the abstract ideas that are claimed in the GreatGigz patents.  Because the

claims merely take age-old concepts and apply them in a generic computer-based environment,

they fail to satisfy either prong of the two-step test set forth in the Supreme Court's seminal

decision, *Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208 (2014).

The specification of the asserted GreatGigz patents unequivocally describes the claimed

subject-matter as embodying abstract concepts, and itself forecloses any conclusion other than

that the claims are patent-ineligible.  But this case is unique because there is also a wealth of

directly on-point caselaw that confirms that those claims are patent-ineligible.  Multiple

decisions have invalidated claims directed to nearly identical subject-matter concerning job

searching and scheduling.  *See, e.g.*, *Am. Well Corp. v. Teladoc, Inc.*, 191 F. Supp. 3d 135 (D.

Mass. 2016) (invalidating claims directed to abstract idea of connecting patients with available

healthcare providers); *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247 (E.D. Pa. 2016)

1

(invalidating claims directed to abstract idea of collecting and analyzing references for job candidates).  And multiple other decisions have invalidated claims from the inventor of the GreatGigz patents (Raymond Anthony Joao, an attorney who has been involved in nearly 200 cases asserting patents for which he is the sole inventor and sole prosecuting attorney), which were likewise directed to generic computer technology used to implement well-known abstract ideas.  *See, e.g.*, *Joao Bock Transaction Sys., LLC v. Fid. Nat'l Info. Servs., Inc.*, 122 F. Supp. 3d 1322 (M.D. Fla. 2015); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513 (D. Del. 2014).  Consistent with this extensive line of caselaw, the Court should find that the claims asserted by GreatGigz are invalid, and dismiss the Complaint with prejudice.

## I.      STATEMENT OF THE ISSUE

The claims of the patents asserted against Genesis are directed to the abstract ideas of storing and exchanging information to schedule a work-related appointment, and storing and exchanging information to hire employees or independent contractors.  Should the Court therefore dismiss the Complaint pursuant to Rule 12(b)(6) for failing to state a claim?

## II.     FACTUAL BACKGROUND

### A.      The Parties

Plaintiff GreatGigz is a Florida limited liability company with its principal place of business in Florida.  GreatGigz does not appear to conduct any activities other than the assertion of patents naming Raymond Anthony Joao as inventor.  (*See, e.g.*, Compl. ¶ 1.)  Defendant Genesis is a 501(c)(3) non-profit health organization, which operates seven health clinics serving primarily low-income patients in Texas and Arkansas by providing "health care services (including, but not limited, to family medicine, pediatrics, behavioral health, dentistry, dermatology, counseling, education, pharmacy, and virtual visits."  (*See* https://www.genesisprimecare.org (cited in Compl. ¶ 6); *see also* Compl. ¶ 40.)

2

### B.    The Complaint

The Complaint asserts patent infringement against Genesis, although it is not entirely clear which patents GreatGigz intended to assert.  In a section of the Complaint entitled "Patents-in-Suit"—an undefined term—GreatGigz claims to own U.S. Patent Nos. 6,662,194 ("the '194 Patent"), 7,490,086 ("the '086 Patent") 9,760,864 ("the '864 Patent"), and 10,096,000 ("the '000 Patent"), which it collectively calls "'the GGS Patents.'"  (Compl. ¶ 8.)  GreatGigz then "alleges infringement on the part of Defendant of [just] the '194 Patent and the '086 Patent," which it calls "the 'Asserted Patents.'"  (Compl. ¶ 14.)  The remaining paragraphs that precede the Counts of the Complaint are addressed exclusively to the "Asserted Patents"—i.e., just to the '194 and '086 Patents.  (*See* Compl. ¶¶ 15-34.)  Yet, the Counts are not limited to the "Asserted Patents," and instead include a Count for each of the four "GGS Patents."  (*See* Compl. ¶¶ 36-93.)

According to the Complaint, GreatGigz infringes the GGS Patents because it provides a "Patient Portal, comprising memory, processors, transmitters and/or receivers."  (Compl. ¶¶ 40, 55, 68, 83.)  The crux of GreatGigz's infringement allegations is that a Genesis customer can use the Patient Portal to schedule an appointment with a healthcare provider "using a mobile device, laptop, or PC," as shown for instance in the website screenshots reproduced as Figures 5-8 of the Complaint.  (Compl. ¶¶ 41-42; 57, 69-70, 85-86.)

### C.    The Claims of the GGS Patents

The GGS Patents all name Raymond Anthony Joao as the sole inventor; he was also their prosecuting attorney.  (Compl. ¶ 11.)  The GGS Patents are all in the same patent family, and claim priority to the same provisional application, which was filed on July 31, 1999.  The '194 Patent issued on December 9, 2003; the '086 Patent issued on February 10, 2009; the '864 Patent

issued on September 12, 2017; and the '000 Patent issued on October 9, 2018.  (*See* Exs. A-D.)[1]

The '194 and '086 Patents thus issued well before the Supreme Court's seminal *Alice* decision.

The written descriptions of the GGS Patents are all nearly identical, and include the same 16 drawing sheets.  Other than the description of related applications, which vary for each of the GGS Patents, the only notable difference among them is that the title of the '194 Patent is "Apparatus and Method for Providing Recruitment Information," while the title of the remaining three GGS Patents is "Apparatus and Method for Providing Job Searching Services, Recruitment Services and/or Recruitment-Related Services."  (*See* Exs. A-D.)

GreatGigz alleges infringement of "at least claim 25 of the '194 Patent"; "at least claim 18 of the '086 Patent"; "at least claim 1 of the '864 Patent"; and "at least claim 1 of the '000 Patent" (collectively, the "Asserted Claims").  (Compl. ¶¶ 39, 54, 67, 82.)

### 1.    The Asserted Claims of the '194, '864, and '000 Patents

The Asserted Claims of the '194, '864, and '000 Patents are directed to essentially the same subject matter:  computer-based storage and exchange of work scheduling information. The Asserted Claims of these patents (collectively referred to as the "Work Scheduling Claims") are reproduced below (with overlapping elements shown in distinct colors):

| 6,662,194 (Ex. A) | 9,760,864 (Ex. C) | 10,096,000 (Ex. D) |
|---|---|---|
| 25. An apparatus for providing recruitment information, comprising:<br><br>a memory device for storing at least one of work schedule information and scheduling information for at least one of an individual, an independent contractor, a temporary worker, and a freelancer;<br><br>a receiver for receiving a first request, wherein the first request | 1. An apparatus, comprising:<br><br>a memory device or a database, wherein the memory device or the database stores work schedule information or scheduling information of or for a plurality of individuals, independent contractors, temporary workers, or freelancers;<br><br>a receiver, wherein the receiver receives a first request, wherein the first request | 1. An apparatus, comprising:<br><br>a memory device, wherein the memory device stores work schedule information or scheduling information for an employer or a hiring entity, or for an individual, an independent contractor, a temporary worker, or a freelancer;<br><br>a receiver, wherein the receiver receives a first request, wherein the |

---

[1]    GreatGigz did not attach any of the GGS Patents to its Complaint; they have been submitted as Exhibits A through D to this motion.

contains information regarding a request to obtain at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein the first request is received from a first communication device associated with an employer or hiring entity;

a processing device for processing information contained in the first request, wherein the processing device generates a first message containing the at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer; and

a transmitter for transmitting the first message to the first communication device,

wherein the receiver receives a second request, wherein the second request contains information for at least one of reserving, engaging, and requesting, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein at least one of the processing device processes the information contained in the second request and at least one of reserves, engages, and requests, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, the processing device generates a second message containing information regarding the second request, and the transmitter transmits a second message containing information regarding the second request to a second communication device associated with the at least one of an individual, an independent contractor, a temporary worker, and a freelancer.

contains information regarding a request to obtain work schedule information or scheduling information of or for an individual, an independent contractor, a temporary worker, or a freelancer, from among the plurality of individuals, independent contractors, temporary workers, or freelancers, wherein the first request is received from a first communication device associated with an employer or a hiring entity;

a processor, wherein the processor is associated with a website, and further wherein the processor is specially programmed to process or to provide job search information, recruitment information, or recruitment-related information, wherein the processor processes information contained in the first request, wherein the processor or the apparatus generates a first message in response to the first request, and wherein the first message contains the work schedule information or the scheduling information of or for the individual, the independent contractor, the temporary worker, or the freelancer; and

a transmitter, wherein the transmitter transmits the first message to the first communication device on, over, or via, the Internet or the World Wide Web,

wherein the apparatus receives a second request, wherein the second request contains information for reserving, engaging, or requesting, the services of the individual, the independent contractor, the temporary worker, or the freelancer,

wherein the apparatus processes the information contained in the second request and generates a second message containing information regarding the second request, and further wherein the apparatus transmits the second message to a second communication device, wherein the second communication device is associated with the individual, the

first request contains information regarding a request to obtain work schedule information or scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, wherein the first request is transmitted from a first communication device associated with an employer or hiring entity or associated with an individual, an independent contractor, a temporary worker, or a freelancer;

a processing device, wherein the processing device is specially programmed for processing information contained in the first request, wherein the processing device generates a first message containing the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer; and

a transmitter, wherein the transmitter transmits the first message to the first communication device or to a second communication device,

wherein the apparatus processes information contained in a second request, wherein the second request contains information for offering services of the individual, the independent contractor, the temporary worker, or the freelancer, to the employer or hiring entity, or contains information for the employer or hiring entity reserving or requesting the services of the individual, the independent contractor, the temporary worker, or the freelancer, wherein the information contained in the second request is based on the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, contained in the first message.

5

| | independent contractor, the temporary worker, or the freelancer. | |
|---|---|---|

As shown above, each of these claims is directed to an apparatus that includes (i) a database/memory device that stores work scheduling information; (ii) a receiver that receives a first request for work scheduling information; (iii) a processor/processing device that processes the first request and generates a message with scheduling information; (iv) a transmitter that sends the message with scheduling information; and (v) a means for receiving, processing, and responding to a second request to reserve, engage, or request services relating to the previously received scheduling information.  These claims are thus directed to the well-known process of scheduling a work appointment by first requesting information about when a worker is available, and then, after receiving such information, requesting a time slot for the work to be done.

The common specification of the GGS Patents confirms that the Work Scheduling Claims are directed to the familiar and straightforward process of scheduling work-related appointments. For instance, the specification states that "[a]n employer may utilize the schedules" that are "stored in the database **10H** of the central processing computer **10**" in order "to reserve, engage, and/or request the services of an individual."  (Ex. A at 33:30-55.)  In so doing, "the employer may review the schedules . . . until it identifies an individual . . . who is . . . acceptable and available for the dates and/or times, as well as places, needed by the employer."  (*Id.* at 33:55-67.)  Once such an individual has been identified:

> [T]he employer can reserve, engage, and/or request, the services of the individual or individuals by transmitting an appropriate message from the employer computer **30** to the central processing computer **10**.  The message can include the amount which the employer is willing to pay for the individual's services. Thereafter the central processing computer **10** will transmit a message to the individual computer(s) **20** associated with the individual or individuals . . . .

(Ex. A at 34:1-11.)

2.      The Asserted Claim of the '086 Patent

Asserted Claim 18 of the '086 Patent is directed to slightly different subject-matter as compared to the Work Scheduling Claims, as set forth below (color-coded as above):

18. An apparatus, comprising:

a memory device, wherein the memory device stores information regarding an individual available for at least one of applying for and interviewing for at least one of a job, a job opportunity, and a hiring need, and further wherein the memory device stores information regarding a recruitment search request or inquiry;

processing device, wherein the processing device processes the information regarding a recruitment search request or inquiry upon a detection of an occurrence of a searching event, wherein the searching event is an occurrence of at least one of a job posting by at least one employer or at least one hiring entity, a posting of new or revised data or information from at least one individual or a group of individuals, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an interest by at least one employer or at least one hiring entity to fill a position, and an event which creates an interest by at least one individual to seek a position, wherein the processing device automatically detects the occurrence of the searching event, wherein the processing device utilizes the information regarding an individual stored in the memory device in processing the information regarding a recruitment search request or inquiry, and further wherein the processing device generates a message containing information regarding the individual, wherein the message is responsive to the recruitment search request or inquiry; and

a transmitter, wherein the transmitter transmits the message to a communication device associated with an employer or hiring entity.

(*See* Ex. B.)  In other words, this claim (hereafter the "Job Search Claim") is directed to a three-element apparatus that includes: (i) a memory device that stores information regarding jobs and job candidates; (ii) a processing device that processes a job-related request or inquiry; and (iii) a transmitter that sends a message in response to a job-related request or inquiry.  This claim is thus directed to the well-known process of using computers to facilitate job applications and communications between employers and potential workers.

7

### III.    LEGAL STANDARDS

#### A.    Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) requires that a complaint be dismissed if it fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In light of the Supreme Court's

admonition that patent eligibility is a "threshold" issue, *Bilski v. Kappos*, 561 U.S. 593, 602

(2010), the Federal Circuit has repeatedly held that disposing of patent-ineligible claims on a

motion to dismiss is appropriate, because no claim for relief can be based on such unpatentable

subject matter.  *See, e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014);

*buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1351-52 (Fed. Cir. 2014).  When considering a

motion to dismiss based on Section 101 grounds, "a court need not 'accept as true allegations that

contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the

patent specification."  *Secured Mail Sols. LLC v. Universal Wilde*, 873 F.3d 905, 913 (Fed. Cir.

2017) (citation omitted).  In particular, allegations about inventiveness that are "wholly divorced

from the claims or the specification" cannot defeat such a motion.  *Cellspin Soft, Inc. v. Fitbit,*

*Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

#### B.    Legal Standard for Patent Eligibility Under 35 U.S.C. § 101

The Patent Act provides that "[w]hoever invents or discovers any new and useful process,

machine, manufacture, or composition of matter, or any new and useful improvement thereof,

may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C.

§ 101.  However, Section 101 has been interpreted by the Supreme Court as "contain[ing] an

important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not

patentable."  *Alice*, 573 U.S. at 216 (citation omitted).  "The 'abstract' ideas category embodies

'the longstanding rule that "[a]n idea of itself is not patentable."'"  *Id.* at 218 (alteration in

original) (citations omitted).  When considering whether subject matter falls into this category,

courts "must distinguish between patents that claim the '"buildin[g] block[s]"' of human ingenuity and those that integrate the building blocks into something more." *Id.* at 217 (alterations in original) (citation omitted).

The Supreme Court has established a two-part test for determining whether a claim is directed to subject matter that is not eligible for patent protection. *See Alice*, 573 U.S. at 217-18. In Step 1, the Court asks whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. In so doing, courts must "examine the 'focus' of the claim, i.e., its 'character as a whole.'" *First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 462 (E.D. Tex. 2019). If the "focus" of a claim is abstract, then Step 2 requires that the court assess whether the patent claims include "an '"inventive concept"'" that can "'transform' the . . . abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 221 (citation omitted). The *Alice* Court defined this inventive concept as "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (alteration in original) (citation omitted). If a claim is directed merely to the implementation of an abstract idea on computer software, or to "well-understood, routine, conventional activity" or technology, then there is no "inventive concept" sufficient to satisfy Step 2 of the *Alice* test. *See id.* at 221, 225-26; *see also Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012).

## IV.   THE GGS PATENTS CLAIM SUBJECT-MATTER THAT IS UNPATENTABLE UNDER SECTION 101

### A.   The Asserted Claims Fail to Satisfy Step 1 of the *Alice* Test Because They Are Directed to Abstract Ideas

As noted above, there are two categories of Asserted Claims: the Work Scheduling Claims and the Job Search Claim. These sets of claims are directed to distinct but related abstract ideas: the storage and exchange of information to schedule a job, and the storage and

9

exchange of information relating to a job search, respectively.[2]  The Asserted Claims recite generic computer components (databases, processors, receivers, transmitters, etc.) that are used in conventional ways (storing, processing, receiving, and transmitting information) to facilitate conventional communications relating to job openings and appointment scheduling.

The steps performed by those generic computer components have been practiced for essentially the whole of modern human history—so long as there have been employers willing to pay others to perform jobs, those employers and potential employees have communicated about job searches and scheduling.  And for essentially as long as computers have existed, they were available to facilitate the sort of communications (i.e., storing information regarding job openings and schedules, and exchanging messages regarding them) that are claimed in the GGS Patents.  The Asserted Claims merely "appl[y] existing technology to automate a human process," and are thus abstract.  *See, e.g.*, *Repifi Vendor Logistics, Inc. v. Intellicentrics, Inc.*, No. 4:20-cv-448-SDJ, 2021 WL 1196271, at *5 (E.D. Tex. Mar. 30, 2021).  Indeed, the common

---

[2]   For purposes of this motion, there is no need for the Court to perform claim construction for any of the terms of the GGS Patents, as their abstract and non-inventive nature is self-evident.  Moreover, in cases involving at least some of the GGS Patents, GreatGigz has previously argued that the plain and ordinary meaning applies to all claim terms; i.e., that no claim constructions are necessary.  *See, e.g.*, *GreatGigz Sol'ns, LLC v. Freelancer Ltd.*, Case No. 6:20-cv-00738 (W.D. Tex.) (Dkt. No. 30).  Genesis understands that GreatGigz intends to argue that two terms need to be construed prior to consideration of this motion: "processing device" and "searching event."  Although GreatGigz has not yet proposed constructions for these terms, Genesis notes that in prior litigation before this Court, GreatGigz proposed that the term "processing device," as used in the '086 Patent, should have its "plain and ordinary meaning," and that the term "searching event" should be construed to recite the language that already appears in, for instance, claim 1 of the '086 Patent.  *See GreatGigz Solutions, LLC v. Kelly Services, Inc.*, Case No. 2:21-cv-0051-JRG (E.D. Tex., filed Feb. 17, 2021) (Dkt. No. 47 at 11-12.)  GreatGigz's position that claim construction is necessary for this motion is inconsistent with its prior arguments, and appears calculated to artificially create the appearance of a need for claim construction where none exists.  In any event, to the extent this motion is not granted in full, GGS reserves the right to offer proposed claim constructions for any asserted claim of the GGS Patents.

specification of the GGS Patents acknowledges that they are "directed to" replicating "job

searching services" that have long been performed by "so-called 'headhunters', employment

and/or career consultants, temporary employment agencies, personal agents, personal managers,

and/or other intermediaries," including "bring[ing] the respective parties together[,] assist[ing]

them in obtaining introductions, establishing a dialog between parties reaching agreement on,

and/or establishing an employment . . . relationship." (*Id.* at 1:16-23; 1:49-58.)  The Asserted

Claims are thus directed to "a fundamental economic practice long prevalent in our system of

commerce." *Alice*, 573 U.S. at 219 (citing *Bilski*, 561 U.S. at 611).

As further confirmation of their abstract character, the Asserted Claims are (i) closely

analogous to those that have been previously held to be abstract; (ii) would effectively preempt

the field of job searching and scheduling; (iii) merely use computers as a tool; and (iv) could be

performed manually with nothing more than the human mind, a pen, and paper.

### 1.     The Asserted Claims Are Closely Analogous To Those That Have Been Previously Found to Be Directed To Abstract Ideas

To determine whether claims are directed to an abstract idea, courts should "compare the

claims at issue to those claims already found to be directed to an abstract idea in previous cases."

*Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1334 (Fed. Cir. 2016).  Both sets of Asserted

Claims are virtually identical to claims that have been found to be abstract under *Alice* Step 1.

For instance, the Work Scheduling Claims are strikingly similar to those invalidated in

*American Well Corporation v. Teladoc, Inc.*, 191 F. Supp. 3d 135 (D. Mass. 2016).  In *Teladoc*,

the claims were directed to a computer-implemented method and apparatus that (i) utilized a

database to store information relating to medical service providers, (ii) received a request from a

consumer of medical services to consult with a medical service provider, and then (iii)

established a "real-time communication channel between the consumer of services" and the

potential service provider.  *Id.* at 138-39.  The *Teladoc* Court found that these claims "embody the abstract idea of connecting a patient with an available doctor," and that, at best, "[t]hey only implement a novel idea using admittedly known computer technology, which by itself cannot save the claims from being abstract."  *Id.* at 144-45.  The *Teladoc* Court thus granted the defendant's motion to dismiss.  *Id.* at 146.

The Work Scheduling Claims map directly onto the claims asserted in *Teladoc*.  Just as in *Teladoc*, the Work Scheduling Claims are directed to an apparatus that (i) includes a database that stores information relating to service providers (i.e., "work schedule information"), (ii) includes a receiver that receives a request from a consumer of services (i.e., "a first request [that] contains information regarding a request to obtain . . . work schedule information"); and (iii) establishes a communication channel between the consumer of services and service provider (i.e., "the processing device generates a first message" that is transmitted to the "employer or hiring entity" and also generates a "second message" relating to the request that is also transmitted).  (*See, e.g.*, Ex. A, cl. 25.)  Those are precisely the sort of claim elements that were found to be abstract in *Teladoc*.

This Court likewise granted a motion to dismiss abstract patent claims that are closely analogous to the Work Scheduling Claims in *P & RO Solutions Group, Inc. v. CiM Maintenance, Inc.*, 273 F. Supp. 3d 699 (E.D. Tex. 2017) ("*P&RO*").  This Court found that the claims in *P&RO* were directed to "the abstract idea of scheduling business activities using a computer and computer network."  *Id.* at 708.  That is what the Work Scheduling Claims are directed to: scheduling business activities using computer components (a database, processor, receiver, and transmitter) and a computer network (such as the "Internet or the World Wide Web").  (*See, e.g.*, Ex. C, cl. 1.)

The Job Search Claim fares no better, as a closely analogous set of claims was invalidated in *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501 (D. Del. 2014).  In that case, the claims at issue recited a "method for operating a computer system to facilitate an exchange of identities between two anonymous parties," which included the steps of "receiving" certain information from two parties, "processing [a] search request," and then, under certain circumstances, "transmitting" the identities of the two parties.  *Id.* at 507.  The Delaware Court accepted the defendant's argument that "the claimed invention is directed to 'nothing more than the abstract idea of a controlled exchange of information about people that has long been practiced by human matchmakers and headhunters.'"  *Id.* at 508 (citation omitted).  That description applies equally to the Job Search Claim, which similarly is directed to a three-element apparatus (with generic computer components carrying out "receiving," "processing," and "transmitting" steps) that provides for the controlled exchange of employment-related information in a manner that has long been practiced by headhunters.

Similar sets of claims were likewise invalidated in connection with the grant of a motion to dismiss in *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247 (E.D. Pa. 2016).  The patent claims found to be abstract in *SkillSurvey* related "to a human resource management system, and more particularly to a system for collecting and analyzing information from references identified by job candidates."  *Id.* at 252 (citation omitted).  In particular, the *SkillSurvey* Court concluded that the claims asserted there were directed to "conducting job applicant reference checks," which is a "'time-honored, "longstanding commercial practice" and "method of organizing human activity."'"  *Id.* at 255 (citation omitted).  Just as the *SkillSurvey* claims related to the "abstract idea of soliciting, storing, and analyzing of information provided by [job] references," so too is the Job Search Claim directed to the abstract idea of soliciting

13

(through "a searching event"), storing (in a "memory device or database"), and analyzing

(through a "processing device") job-related information (i.e., "information regarding a

recruitment search request or inquiry").[3]

The Asserted Claims also map directly onto other patents for which Mr. Joao was the sole

named inventor and prosecuting attorney, and which have been invalidated by multiple district

courts as directed to unpatentable abstract ideas.  For instance, in *Joao Bock Transaction*

*Systems, LLC v. Jack Henry & Associates, Inc.*, the District of Delaware granted summary

judgment of invalidity of U.S. Patent No. 7,096,003 ("the Joao '003 Patent"), after concluding

that it was directed to "the abstract idea . . . [of] a conventional business practice utilized by

bankers or financial institutions in their dealings with individual account holders."  76 F. Supp.

3d 513, 522 (D. Del. 2014) ("*Jack Henry*").  The Joao '003 Patent was prosecuted by Mr. Joao

during the same timeframe as the '194 Patent asserted here, and claims computer components

that are nearly identical to the GGS Patents.  A representative claim of the Joao '003 Patent

"utilizes a memory to store a limitation or restriction, a communication device to transmit, a

receiver to receive, and a processing device to process information and generate a signal

containing information."  *Id.* (color-coding added).  As indicated by the color-coding, those are

the same four computer components, doing the same sorts of tasks (storing, transmitting,

receiving, processing, and generating), as the components claimed in the GGS Patents.  *See id.* at

523 (noting that the claimed "computer components are being employed for basic functions," and

---

[3]   The Job Search Claim is so abstract as to fall into the category of claims that were
invalidated as directed to unpatentable subject-matter even before the Supreme Court's
decision in *Alice*.  *See, e.g.*, *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d
189 (S.D.N.Y. 2013) (granting motion for judgment on the pleadings after finding that a
patent directed to "matching of job applicants with employers based on both parties' preferred
attributes in applicants and employers, respectively" impermissibly claimed an abstract idea
that "must be invalidated" under the pre-*Alice* precedents).

concluding "that such components are not 'specific' or 'special purpose' computers").  The only notable difference between the Joao '003 Patent claims and the Asserted Claims is the field of use, with the GGS Patents directed to the field of job searching and scheduling, and the Joao '003 Patent directed to the field of banking transactions.  *See also Joao Control & Monitoring Sys., LLC v. Tellular Corp.*, 173 F. Supp. 3d 717, 720 (N.D. Ill. 2016) (granting motion for judgment on the pleadings of invalidity for two Joao patents directed to abstract "systems designed to provide security for vehicles and premises through a computer network connected to the Internet" using the same sorts of computer components claimed in the other Joao patents).

One year after the *Jack Henry* decision, the Middle District of Florida likewise concluded that both the Joao '003 Patent and an unrelated patent (U.S. Patent No. 6,047,270) were directed to unpatentable abstract ideas.  *Joao Bock Transaction Sys., LLC v. Fid. Nat'l Info. Servs., Inc.*, 122 F. Supp. 3d 1322 (M.D. Fla. 2015) (hereafter "*Fidelity*").  In *Fidelity*, the Joao plaintiff argued that "the systems claimed in the patents-in-suit were novel when they were invented and have only since become the preferred security practice because they solved problems in prior systems." *Id.* at 1331.  But the *Fidelity* court rejected this argument, concluding that the claims "relate to [the abstract idea of] account monitoring and authorization." *Id.*  GreatGigz makes a nearly identical argument here, asserting that the claimed "architecture was unconventional in the job placement/search field, which at the time of invention was conventionally limited to static and 'relatively primitive' job listings."  (Compl. ¶ 21.)  Just as the *Fidelity* Court rejected such an argument, so too should this Court.

### 2.    The Asserted Claims Would Effectively Preempt the Field of Job Scheduling and Searching

As the Supreme Court noted in *Alice*, the primary "concern that drives the exclusionary principle [of Section 101] [i]s one of pre-emption," i.e., where a "patent would pre-empt basic

tools of scientific and technological work," then the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws."  *Alice*, 573 U.S. at 216 (citations omitted).  The GGS Patents would effectively preempt the entire field of online job searching and scheduling.

The Complaint embraces the far-reaching preemptive impact of the Asserted Claims, asserting that "the invention as claimed is what permitted the eventual rise of the 'gig economy' as is now commonly exploited by providers such as Uber (which did not exist until 2010)." (Compl. ¶ 22.)  In other words, according to Plaintiff, the entire "gig economy" (which involves searching for and scheduling jobs using basic computer components and communications devices), as well as more traditional job scheduling (which involves, for instance, scheduling appointments with physicians, like those made through the Genesis Patient Portal), are all within the scope of the GGS Patents.  When a claim would essentially preempt the entire field of performing job searching and scheduling on computers, that is effectively an impermissible monopoly on an abstract idea.  *See, e.g.*, *Jack Henry*, 76 F. Supp. 3d at 524 (refusing to "[a]llow[] the asserted claims to survive" because it "would tie up any innovation related to performing banking transactions on computers").

As but one illustration of the preemptive nature of the Work Scheduling Claims, a hypothetical whereby a patient (Rudolph) wants to manually schedule a dental appointment with Dr. Hermey, through his assistant Yukon Cornelius, involves each limitation of the '194 Patent:

| Limitations of '194 Patent Claim 25 | Routine Steps Performed When Scheduling Work |
|---|---|
| "storing at least one of work schedule information and scheduling information for at least one of an individual, an independent contractor, a temporary worker, and a freelancer"; | Yukon Cornelius maintains a paper calendar on which he keeps track of all the scheduled dental appointments for Dr. Hermey. |

| | |
|---|---|
| "receiving a first request, wherein the first request contains information regarding a request to obtain at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer"; | Rudolph calls Dr. Hermey's office and requests an appointment with Dr. Hermey. |
| "generates a first message containing the at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer"; | Yukon Cornelius answers the phone and determines that Dr. Hermey is generally available for appointments on Wednesday and Thursday afternoon. |
| "transmitting the first message"; | Yukon Cornelius tells Rudolph the availability for Dr. Hermey, either by phone or by sending a written note. |
| "receives a second request, wherein the second request contains information for at least one of reserving, engaging, and requesting, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer", | Rudolph then follows up with Yukon Cornelius, asking to reserve an appointment with Dr. Hermey for Wednesday at 2:30 pm. |
| "processes the information contained in the second request and at least one of reserves, engages, and requests, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer," | Yukon Cornelius writes in Rudolph's name on Dr. Hermey's calendar at that agreed-upon time. |
| "generates a second message containing information regarding the second request, and . . . transmits a second message containing information regarding the second request" | Yukon Cornelius tells Rudolph that he is scheduled for an appointment with Dr. Hermey for Wednesday at 2:30 pm, either by phone or by sending a letter to him |

The above illustration concerns just a single field (dentistry)—but the Work Scheduling Claims

are broad enough to preempt job scheduling in myriad contexts, including calling a taxi service

to hire a driver, scheduling time to meet with an attorney to discuss a potential engagement,

scheduling a dog walker, making an appointment at a barber shop, etc.  Thus, to allow those

claims to survive "would disproportionately risk preempting a basic building block of human

interaction, retarding rather than promoting progress, contrary to the very purpose patents are

17

granted." *Walker Digit.*, 66 F. Supp. 3d at 511; *see also Teladoc*, 191 F. Supp. 3d at 143 (invalidating claims that were analogous to "(i) a receptionist maintaining in an appointment book information about which doctors are currently available, (ii) a patient calling that office, and (iii) the receptionist identifying an available doctor and either placing the patient on a telephone call with that doctor or scheduling a later appointment").

A similar hypothetical involving a headhunter presenting a job candidate maps precisely onto the Job Searching Claims:

| Limitations of '086 Patent Claim 18 | Routine Steps Performed in Headhunting |
|---|---|
| stores information regarding an individual available for at least one of applying for and interviewing for at least one of a job, a job opportunity, and a hiring need, and further . . . stores information regarding a recruitment search request or inquiry; | Headhunter Mrs. Claus keeps a list of dentists and resumes of those who are interested in being considered for the position of Santa's dentist, including Dr. Hermey, a local dentist. |
| processes the information regarding a recruitment search request or inquiry upon a detection of an occurrence of a searching event, wherein the searching event is an occurrence of at least one of a job posting by at least one employer or at least one hiring entity, a posting of new or revised data or information from at least one individual or a group of individuals, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an interest by at least one employer or at least one hiring entity to fill a position, and an event which creates an interest by at least one individual to seek a position, | Mrs. Claus learns that Santa is in need of a new dentist from a job posting that she sees on the North Pole bulletin board. |
| utilizes the information regarding an individual . . . in processing the information regarding a recruitment search request or inquiry, | Mrs. Claus consults her list/set of resumes to determine if she has any potential candidates, and locates the information regarding Dr. Hermey's experience. |
| generates a message containing information regarding the individual, wherein the message is responsive to the recruitment search request or inquiry; and | Mrs. Claus prepares a message to Santa, including a description of Dr. Hermey's qualifications based on the information that she keeps in her files about him. |

| | |
|---|---|
| transmits the message to a communication device associated with an employer or hiring entity. | Mrs. Claus presents Dr. Hermey as a potential candidate for the position by calling Santa and reading him the message. |

As with the Work Scheduling Claims, the Job Searching Claim is directed to a fundamental economic practice that headhunters have engaged in for ages.  And as with the Work Scheduling Claims, the Job Searching Claim relates to an endless list of potential fields—an agent proposing a client for a potential stage role in response to a casting call; a judge communicating with law schools regarding potential clerk candidates; a local government official recommending a contractor who has done previous construction work—these examples and myriad others would be preempted by the Job Searching Claim, which is therefore impermissibly abstract.  *See, e.g.*, *Lumen View*, 984 F. Supp. 2d at 199 (invalidating claims in part because they "preempt[] the use of computer assisted matchmaking in the context of any transaction or enterprise").

### 3. The Asserted Claims Do Not Improve Computer Functionality, But Instead Use Computers Only As A Tool

When evaluating computer-related claims, courts should examine whether the claims "purport to improve the functioning of the computer itself," *Alice*, 573 U.S. at 225, or by contrast whether "computers are invoked merely as a tool" to implement an abstract process.  *Enfish*, 822 F.3d at 1335-36; *see also Repifi*, 2021 WL 1196271, at *4-5.  If it is the latter, then the claims are abstract and unpatentable.

For instance, the Federal Circuit recently considered a patent to an allegedly novel camera apparatus; the patentees argued that their claims were "directed to a patent-eligible improvement in digital camera functionality" by "providing a specific solution" to problems such as "low resolution caused by low pixel counts" and "inability to show vivid colors caused by limited pixel depth."  *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021) (citation omitted).  But the Federal Circuit rejected that contention because the claim recited only "conventional

camera components," that "perform only their basic functions."  *Id.* at 1043; *see also Procon Analytics, LLC v. Spireon, Inc.*, No. 3:19-cv-201, 2021 WL 1269081, at *8-9 (E.D. Tenn. Apr. 6, 2021) (patent did "not pass muster under step 2 of *Alice*" where "[n]othing in the claims, understood in light of the specification, require[d] anything other than off-the-shelf, conventional computer, network, and display technology gathering, sending, and presenting the desired information").  Patent-eligible computer functionality improvements have instead been rooted in uniquely computer-based technology, such as new ways of identifying computer hackers, improvements to the photographic capture technology for check imaging, new ways of programming animation software, and improvements in graphical user interfaces ["GUIs"].  *Repifi*, 2021 WL 1196271, at *4-5; *see also Realtime Data LLC v. Array Networks Inc.*, No. 17-0800-CFC, 2021 WL 1752045, at *16 n.4 (D. Del. May 4, 2021).  In other words, patentable improvements to functionality arise only when they address a "concern **unique to computers**."  *Id.* (emphasis added).  The Asserted Claims do not address a concern unique to computers.  They instead relate to alleged improvements to the generic concept of job searching/scheduling, which bears no resemblance to claims that relate to computer hacking, photographic check imaging technology, animation software improvements, or GUI improvements—nor do they claim improved hardware or computer components used in unconventional ways.

Indeed, the common specification of the GGS Patents affirmatively discloses that the claimed invention merely utilizes computers as a tool to allegedly improve the art of job searching, rather than improving the way that computers or computer components function:

> The apparatus and method of the present invention overcomes the shortcomings of the prior art and provides an apparatus and method for providing job searching services, recruitment services and/or recruitment-related services.  *The present invention utilizes the technologies and advances in information technology and in communication technology in order to provide these services in a network environment.*

(Ex. A at 3:18-24.)  The Complaint echoes this description, alleging that "the inventions as claimed capture a technological solution to the deficiencies in the art by eliminating the need to rely upon interpersonal relationships as a limiting factor in job searching."  (Compl. ¶ 18; *see also id.*, ¶ 23 (alleging that "the inventions as claimed provide a technological solution to the deficiencies in the art *by facilitating the hiring process as between an employer and an individual job seeker*")  That has nothing to do with computer functionality; preexisting computers are merely a tool to improve and facilitate job searching using their ordinary components to perform ordinary functions.[4]  *See Simio LLC v. Flexsim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) (noting that "improving a user's experience while using a computer application is not, without more, sufficient to [claim] an improvement in computer functionality" (citation omitted)); *see also Realtime Data*, 2021 WL 1752045, at *17 ("Efficiency gains are not the same as a technical solution to a technical problem."); *Repifi*, 2021 WL 1196271, at *6-7 (invalidating claim that was directed merely to "the use of conventional technologies' already-existing functions," i.e., "smart phones and electronic display badges," in order "to aid a human process").

Moreover, each of the computer components is described in exclusively generic terms, thus confirming that the claimed invention is not directed to any unique or new computer components, functionality, or arrangement.  For instance, the "processing" element of the

---

[4]   The Complaint includes a conclusory allegation that "the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers."  (Compl. ¶ 27.)  Even on a motion to dismiss, where all reasonable inferences are drawn in favor of the non-movant, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'"—nor will mere "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (citations omitted).

claimed invention "can be any suitable computer, network computer, or computer system," while the "transmitting" element of the claimed invention "can be a personal computer, a hand-held computer, a palmtop computer, a laptop computer, a personal communication device, a personal digital assistant, a telephone, a digital telephone, a display telephone, a video telephone, a videophone, a 3G telephone, a television, an interactive television, a beeper, a pager, and/or a watch."  (Ex. A at 12:19-26; 12:43-58.)  The database/memory device claimed in the GGS Patents is likewise conventional, as exemplified by the fact that Mr. Joao turned to two textbooks, including *Fundamentals of Database Systems*, to describe it.  (*Id.* at 17:36-38; 18:10-14.)  Moreover, the operation of the database of the claimed invention involves conventional, off-the-shelf software, such as "database software by Oracle®, Microsoft Access®, and/or Microsoft Excel®."  (*Id.* at 20:19-27.)  This is insufficient to satisfy Section 101, because "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice*, 573 U.S. at 223; *see also SkillSurvey*, 178 F. Supp. 3d at 256 (finding claims to be abstract where "'[t]he claimed steps can easily 'be carried out in existing computers long in use, no new machinery being necessary'" (quoting *Gottschalk v. Benson*, 409 U.S. 63, 66 (1972))); *Teladoc*, 191 F. Supp. 3d at 145-46 (invalidating claims that "do not purport to improve the functioning of computer or internet technology itself, nor do they address an internet-centric challenge," but that instead "append what is admittedly well-known technology to an abstract idea").

### 4.  The Asserted Claims Fail the Pen-and-Paper Test

As another test used to help determine whether a claim is abstract, the Federal Circuit has recognized that "method steps [that] can be performed . . . by a human using a pen and paper" are unpatentable, even if a computer may be required under the claim language.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see also PTP OneClick, LLC v.*

*Avalara, Inc.*, 413 F. Supp. 3d 1050, 1059 (W.D. Wash. 2019) ("The Federal Circuit often uses a 'pencil and paper' test at step one to determine if a human could perform the patented method with a pencil and paper instead of a computer." (collecting cases)).  As noted above, the claims of the GGS Patents fail the pen-and-paper test—a headhunter utilizing pen-and-paper could perform the steps of the Job Searching Claims, while a receptionist/assistant could likewise perform all of the steps of the Work Scheduling Claims.  *See, e.g.*, *SkillSurvey*, 178 F. Supp. 3d at 256 (finding claims abstract based in part on the conclusion that while "[a] pen and paper version of the claimed method would not be particularly efficient," it could nonetheless "be completed").  This failure of the pen-and-paper test provides yet another reason that the Asserted Claims fail Step 1 of the *Alice* test.

### 5.    The Other Claims of the GGS Patents Are Equally Abstract

The Complaint addresses only a single claim from each of the GGS Patents.  To the extent that GreatGigz contends that more than just a single claim from each of the GGS Patents is asserted, the Complaint fails to satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure for claims not addressed in the Complaint.  *See, e.g.*, *Teladoc*, 191 F. Supp. 3d at 140 (treating the four claims identified in the complaint as the lone asserted claims because it "cannot be read to alleged that [defendant] has infringed the [asserted patent] other than" those four claims); *NovaPlast Corp. v. Inplant, LLC*, No. 20-7396 (KM) (JBC), 2021 WL 389386, at *8 (D.N.J. Feb. 3, 2021) (granting motion to dismiss where plaintiff failed to "go through each limitation" of claim alleged to be asserted).

Moreover, even if more than just the Asserted Claims are found to be at issue in this litigation, then the Asserted Claims are representative for purposes of this motion, because (1) the other independent and dependent claims of the GGS Patents are substantially similar to those addressed in this motion, and largely recycle the same subject-matter, referring to the same

generic computer components in apparatus claims, and (2) the Complaint does not allege that any unasserted claim is non-abstract, or provide a "meaningful argument for the distinctive significance of any claim limitations" from any unasserted claim. *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1267 n.2 (Fed. Cir. 2016) (citation omitted).  On the contrary, as noted above, the Complaint does not even explicitly discuss any claims of the '864 and '000 Patents in the body of the Complaint, instead choosing to treat the claims of the '194 Patent and '086 Patent as representative of all four GGS Patents.  (*See* Compl. ¶¶ 14-34.)

As but one example of how the Asserted Claims are representative, the claims that depend from claim 1 of the '864 Patent merely provide additional generic steps that emulate the long-standing process of facilitating working scheduling, such as adding that the information exchanged includes "the amount the employer . . . is willing to pay" (claim 2) or "a hyperlink or link to a web site of the employer" (claim 6), and clarifying that the message is "in an e-mail message or an electronic message transmission" that contains documents, such as a "resume" or "letter of recommendation" (claim 9).  Those additional limitations do nothing to alter the abstract character of the independent claim from which they depend.  Similarly, unasserted claim 1 and asserted claim 18 of the '086 Patent are essentially identical, except the "memory device" recited in claim 1 stores "information regarding at least one of a job opening, a position, an assignment, a contract, and a project," while the "memory device" recited in claim 18 stores "information regarding an individual available for at least one of applying for and interviewing for at least one of a job, job opportunity, or hiring need."  Changing the type of information that is stored in a generic database makes the unasserted claims no less abstract.

## B.     The Asserted Claims Fail Step 2 of the *Alice* Test

Because the Asserted Claims are directed only to "well-understood, routine, [and] conventional activity," they also fail to satisfy Step 2 of *Alice*.  *See Alice*, 573 U.S. at 221, 225;

*see also Yu* 1 F.4th at 1045 (holding that claims failed Step 2 when they are "at a high level of generality and merely invoke[] well-understood, routine, conventional components to apply the abstract idea").  As discussed above, the Asserted Claims all use generic computer components (a processor, receiver, transmitter, database, etc.) to implement well-understood, routine concepts (processing information, sending and receiving information, storing and retrieving information, etc.) that have been performed by humans for years.  That process of automating steps that have long been performed by humans "cannot be the inventive concept because the automation of the human process is itself the abstract idea."  *Repifi*, 2021 WL 1196271, at *9.

For instance, the claims at issue in *Teladoc* "merely add[ed] generic and previously-known computer components to an abstract idea," which were described as performing "routine" tasks including "accessing and 'stor[ing] information' on a 'data repository,' identifying medical service providers in a 'pool,' sending and receiving communications over a 'computer,' and using the Internet to do all of the above."  191 F. Supp. 3d at 145.  Those steps were insufficient to "transform an abstract idea into patent-eligible subject matter."  *Id.*  The description of the claims in *Teladoc* applies equally to the Asserted Claims, which claim (i) accessing and storing information relating to job positions and job schedules in a database, (ii) identifying potential job candidates or appointment availability, (iii) sending and receiving communications using generic communications devices and computer components, and (iv) using a network such as the Internet or World Wide Web to perform those functions.  (*See, e.g.*, '864 Patent, cl. 1.)

The Complaint is unclear as to what GreatGigz contends is the "inventive concept" embodied in the Asserted Claims—the Complaint uses the term "inventive concepts" only to recite the legal standard of *Alice* Step 2 without explaining how it is allegedly satisfied.  (Compl. ¶ 26 ("Further, the claims of the Asserted Patents contain inventive concepts which transform the

underlying non-abstract aspects of the claims into patent-eligible subject matter.").)[5]  The Complaint alleges elsewhere that there are four "unconventional" aspects of the "inventions as claimed":  (i) the use of "an unconventional central clearinghouse for job searching services"; (ii) users can "conduct research without interrupting the processing of the central processor"; (iii) "enhanced confidentiality" is provided "during job search interactions"; (iv) "novel architecture" that "includes the specific claimed transmitters and receivers for carrying out the bi-directional communications among employers and individuals."  (Compl. ¶¶ 18-24.)  None of the foregoing represents an inventive concept that satisfies *Alice* Step 2.

The *first* allegedly inventive concept is nothing of the sort—the only "central clearinghouse" identified in the GGS Patents is a conventional database that utilizes standard programming from Microsoft and is set up in accordance with the teachings of textbooks from the early 1990s.  (Ex. A at 18:1-14; 20:19-27.)  Moreover, the concept of using a central clearinghouse for job searching services is hardly inventive; rolodexes used by headhunters, filing cabinets containing all of the resumes and descriptions of available jobs, and even the memories of individuals working in employment recruiting all have functioned in this way for ages prior to the alleged invention of the '194 Patent.

The *second* allegedly inventive concept suffers from similar deficiencies.  As an initial matter, the claims of the GGS Patents do not recite "conduct[ing] research without interrupting the processing of the central processor."  GreatGigz cannot rely on an unclaimed element in order to supply an inventive concept.  *See, e.g.*, *Yu*, 1 F.4th at 1044-45 (rejecting alleged inventive step because there was a "mismatch" between the alleged step and the claim language,

---

[5]   As noted above, the term "Asserted Patents," as used in the Complaint, refers only to the '194 Patent and the '086 Patent.  The Complaint does not explicitly allege, even generically, that there are any inventive concepts embodied in the claims of the '864 and '000 Patents.

in that the particular language from the specification was not recited in the claims); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (holding that the "§ 101 inquiry must focus on the language of the [a]sserted [c]laims themselves").  Even if the Asserted Claims did recite the concept of "conducting research without interrupting the processing of the central processor," that would not constitute an inventive step.  The specification never describes this as an unconventional or non-routine way of operating computer components.  On the contrary, the specification reveals that this is a standard way of interacting with computer data, describing this functionality as enabled by "links and/or hyperlinks which can be inserted in the various e-mails and/or electronic messages which are utilized and/or transmitted in conjunction with the present invention."  (Ex. A at 24:59-25:6.)  In other words, this alleged inventive concept merely reflects the well-known practice of providing links to websites to allow interested parties to explore job opportunities and scheduling online.

The *third* allegedly inventive concept should likewise be rejected.  Nothing in the claim language reflects any level of confidentiality, and certainly not "enhanced confidentiality."  And even if it did, this sort of inventive concept has been expressly rejected by at least one other district court in precisely this context.  *See Walker Digit.*, 66 F. Supp. 3d at 513 (noting that alleged inventive steps "add nothing inventive to the core concept of anonymously exchanging information about people, a practice that is described in the patent's specification as having long been practiced by human headhunters and matchmakers").  Indeed, the "Background of Invention" section of the GGS Patents confirms that traditional methods of headhunting could "retain at least some level of confidentiality and/or anonymity."  (Ex. A at 3:2-8.)  Even if the alleged invention accelerated this traditional process or provided greater confidentiality than is typical, that does not satisfy Step 2 of *Alice*.  *See, e.g.*, *SkillSurvey*, 178 F. Supp. 3d at 262

27

(noting that even if the "Plaintiff has arguably improved" the process of "reference checking," those improvements are not patentable because "computerizing it is not enough," and "[a]nonymizing data is not enough").

The _fourth_ allegedly inventive concept likewise fails to satisfy Step 2 of _Alice_. The allegedly novel architecture of linking transmitters and receivers to provide for bi-directional communications is nothing more than a description of how all computers operate over the Internet and World Wide Web. The conventional nature of this arrangement is shown, for instance, in Figures 1 and 2 of the GGS Patents:



In other words, Figure 1 shows three generic individual computers linked to three generic employer computers through a processor, and Figure 2 shows that this processor includes conventional and generic components such as a database, receiver, and transmitter. Indeed, the specification teaches only that "[e]ach employer computer **30** can be utilized to transmit information to the central processing computer **10** and to receive information from the central processing computer **10** via the communication network." (Ex. A at 12:63-67.) This bi-directional communication is further explained: "[t]he central processing computer(s) **10**, the individual computer(s) **20** and/or the employer computer(s) **30** can communicate with one

another, and/or be linked to one another, over a communication network and/or a wireless communication network," which can include "the Internet and/or the World Wide Web." (*Id.* at 13:12-46.)  GreatGigz's alleged inventive concept is therefore nothing more than a description of how the Internet worked long before the alleged invention of the GGS Patents, and does not disclose any patentable "architecture." *See, e.g.*, *SkillSurvey*, 178 F. Supp. 3d at 257 (rejecting the plaintiff's allegation that the claimed method disclosed an inventive concept because it used "specially configured 'independent' computer technology" because "[t]he computer and Internet technologies described in the patent are generic" (citation omitted)).

## V.    CONCLUSION

The Asserted Claims are directed to abstract ideas that, although dressed up in technical jargon, merely use computers as a tool to effective preempt the entire field of job searching and scheduling.  As multiple courts have previously recognized, these sorts of claims are unpatentable, and the Complaint should therefore be dismissed in its entirety.

DATED:  December 6, 2021

Respectfully submitted,

/s/ *Amanda A. Abraham*
Amanda A. Abraham
Texas State Bar No.: 24055077
Roth & Abraham Law Firm
115 N. Wellington St., Ste. 200
Marshall, TX 75670
903-935-1665
aa@rothfirm.com

Douglas R. Nemec (*pro hac vice*)
Edward L. Tulin (*pro hac vice*)
Skadden, Arps, Slate,
Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
douglas.nemec@skadden.com
edward.tulin@skadden.com

*Attorneys for Defendant East Texas Border
Health Clinic d/b/a Genesis Primecare*

## <u>CERTIFICATE OF COMPLIANCE WITH THE COURT'S<br>35 U.S.C. § 101 MOTION PRACTICE ORDER</u>

I hereby certify that on December 6, 2021, lead counsel for both sides met and conferred by telephone regarding whether prior claim construction is necessary to inform the Court's analysis as to patentability.  The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

*/s/ Douglas R. Nemec*
Douglas R. Nemec

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 6th day of December, 2021.

*/s/ Amanda A. Abraham*
Amanda A. Abraham