UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**EAST TEXAS BORDER HEALTH CLINIC d/b/a GENESIS PRIMECARE**,<br><br>Defendant. | **Case No. 2:21-cv-00370-JRG** |

**DEFENDANT'S REPLY BRIEF
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.  DEFENDANT'S MOTION IS RIPE FOR RESOLUTION AT THIS JUNCTURE ........... 3

    A.  No Claim Construction Issues Require Resolution At This Stage ......................... 3

    B.  The Allegations from the Complaint Are Conclusory And Unsupported .............. 4

II. THE REPRESENTATIVE CLAIMS ARE UNPATENTABLE .......................................... 6

    A.  The Representative Claims Fail *Alice* Step 1 ............................................ 6

    B.  The Representative Claims Fail *Alice* Step 2 ............................................ 9

III. CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ................................................................................................ 3

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ................................................................................................ 9

*AlexSam, Inc. v. Cigna Corp.*,
    No. 2:20-cv-00081-JRG-RSP, 2020 WL 7233403 (E.D. Tex. Oct. 26, 2020) ...................... 4

*Alice Corp. v. CLS Bank International*,
    573 U.S. 208 (2014) ........................................................................................................ passim

*American Well Corp. v. Teladoc, Inc.*,
    191 F. Supp. 3d 135 (D. Mass. 2016) ...................................................................................... 1

*Bozeman Financial LLC v. Federal Reserve Bank of Atlanta*,
    955 F.3d 971 (Fed. Cir. 2020) ................................................................................................ 10

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ........................................................................................... 2, 9

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019) ................................................................................................ 4

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ................................................................................................ 1

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    711 F. App'x 1012 (Fed. Cir. 2017) ...................................................................................... 10

*Joao Bock Transaction Systems, LLC v. Fidelity National Information Services, Inc.*,
    122 F. Supp. 3d 1322 (M.D. Fla. 2015) ................................................................................... 1

*Joao Bock Transaction Systems, LLC v. Jack Henry & Associates, Inc.*,
    76 F. Supp. 3d 513 (D. Del. 2014) ........................................................................................... 1

*People.ai., Inc. v. SetSail Technologies, Inc.*,
    No. C 20-09148 WHA, 2021 WL 5882069 (N.D. Cal. Dec. 13, 2021) ................................. 8

*Network Apparel Group, LP v. Airwave Networks Inc.*,
    154 F. Supp. 3d 467 (W.D. Tex. 2015) ................................................................................... 3

*P & RO Solutions Group, Inc. v. CiM Maintenance, Inc.*,
    273 F. Supp. 3d 699 (E.D. Tex. 2017)..................................................................................1

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)..........................................................................................4, 7

*SkillSurvey, Inc. v. Checkster LLC*,
    178 F. Supp. 3d 247 (E.D. Pa. 2016) ..................................................................................1

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014).......................................................................................9, 10

*Walker Digital, LLC v. Google, Inc.*,
    66 F. Supp. 3d 501 (D. Del. 2014).......................................................................................1

Plaintiff's opposition brief is not an "opposition" in any ordinary sense.  It fails to address any of the key points from Defendant's motion.  For instance, Plaintiff ignores the following:

- The Asserted Claims are representative and are properly categorized for purposes of the *Alice* analysis as the "Work Scheduling Claims" (i.e., claim 25 of the '194 patent, claim 1 of the '864 patent, and claim 1 of the '000 Patent) and the "Job Search Claim" (claim 18 of the '086 patent).  The opposition brief uses neither the term "Work Scheduling Claims" or "Job Search Claims."

- *Alice* Step 1 requires courts to "compare the claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  The Work Scheduling Claims are most closely analogous to those that were invalidated as unpatentable in *American Well Corp. v. Teladoc, Inc.*, 191 F. Supp. 3d 135 (D. Mass. 2016) and in *P & RO Solutions Group, Inc. v. CiM Maintenance, Inc.*, 273 F. Supp. 3d 699 (E.D. Tex. 2017).  The Job Search Claim is most analogous to those that were invalidated as unpatentable in *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247 (E.D. Pa. 2016) and in *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501 (D. Del. 2014).  The opposition brief addresses none of these cases.

- In addition to the claims invalidated in the foregoing caselaw, the Asserted Claims are similarly analogous to other patents with the same inventor and prosecuting attorney (Mr. Joao) that were likewise invalidated as unpatentable in *Joao Bock Transaction System, LLC v. Fid. Nat'l Info. Servs., Inc.*, 122 F. Supp. 3d 1322 (M.D. Fla. 2015); *Joao Bock Transaction System, LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513 (D. Del. 2014).  The opposition brief addresses neither of those cases.

- The Asserted Claims (i) effectively **preempt** the field of job searching and scheduling; (ii) merely use computers **as a tool**; and (iii) fail the Federal Circuit's **pen-and-paper** test.  The opposition brief does not address any of these points, and thus effectively concedes that these indicia of unpatentable subject-matter all apply.

This is little wonder, as Plaintiff essentially just refiled a brief that it filed earlier this year in *GreatGigz Solutions, LLC v. Kelly Services, Inc.*, Case No. 2:21-cv-00051-JRG (E.D. Tex.) (Dkt. No. 40) ("the Kelly Opposition").  Plaintiff changed the caption and title, changed the references from "Amended Complaint" to "Complaint," and made other minor tweaks (such as adding off-handed references to "Defendant's Motion"), while overlooking remnants of the Kelly Opposition, such as footnote 1 (referring to "Counsel for Kelley Services").  Otherwise, the Table of Authorities and Table of Contents for both briefs are identical, and Plaintiff's opposition

repeats verbatim nearly all arguments from the Kelly Opposition. While the Kelly Opposition may have addressed the arguments raised in that case, it addresses none of the particular arguments made here. That Plaintiff could not be bothered to defend its patents against the specific arguments set forth in Defendant's motion should alone compel dismissal of this action.

Even putting aside the foregoing, Plaintiff's opposition should be rejected on its merits. Plaintiff relies principally upon two contentions: (1) the Asserted Claims are not abstract because they "have a clear, concrete and tangible form in that they are directed to providing 'direct or indirect bi-directional communication between an individual computer and an employer computer'" (Dkt. No. 12 at 10); and (2) the Asserted Claims include an inventive step because they use a "specialized processing device" that satisfies the "machine-or-transformation test" and is not an "off-the-shelf generic computer component" (*id.* at 11-12).

Defendant already addressed Plaintiff's ***first*** argument in its opening brief, but Plaintiff's recycled opposition ignores it entirely. As Defendant noted, the idea of computers communicating with each other is merely a high-level, abstract description of how the Internet works. (Dkt. No. 8 at 28.) This is the epitome of an unpatentable idea, as recognized by the very caselaw Plaintiff cites. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (holding that bidirectional computer communications in the form of "receiv[ing] a request" and "transmit[ing] an offer" in return were not even "arguably inventive") (cited in Dkt. 12 at 9).

Plaintiff's ***second*** argument is similarly flawed in multiple respects. It is not enough for an abstract concept to be applied to a generic machine (such as a processor like a conventional Internet web server); that machine must be specifically designed for the claimed invention. That is not the case here. Moreover, even if the Asserted Claims satisfied the machine-or-transformation test, which they do not, that would be insufficient to provide the required

inventive step in *Alice* Step 2, particularly when Plaintiff has never clearly articulated what it contends is the inventive concept in those claims.

Because the Asserted Claims fail both steps of the *Alice* test, this action should be dismissed with prejudice.

I.  **DEFENDANT'S MOTION IS RIPE FOR RESOLUTION AT THIS JUNCTURE**

    A.  **No Claim Construction Issues Require Resolution At This Stage**

As a preliminary matter, Plaintiff contends that "Defendant's motion is premature and should not be taken up until after claim construction has occurred in this case," arguing that the Court needs to construe the terms "processing device" and "searching event." (Dkt. No. 12 at 13-14.) This argument is misplaced for several reasons.

*First*, while the parties in *Kelly* may have had a claim construction dispute regarding the meaning of those two terms, here Defendant has "accept[ed] Plaintiff's proposed constructions and does not object to the Court adopting them, because even if the Court does so," the Asserted Claims are nonetheless abstract and unpatentable for the reasons set forth in Defendant's opening brief and herein. (Dkt. No. 11 at 3.) That moots Plaintiff's argument. *See, e.g.*, *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (noting that if there are claim construction disputes relating to a motion to dismiss, the court may "proceed by adopting the non-moving party's constructions"); *Network Apparel Grp., LP v. Airwave Networks Inc.*, 154 F. Supp. 3d 467, 474 (W.D. Tex. 2015) (granting Section 101 motion to dismiss after "Defendants accepted [plaintiff's] proposed definitions for the purposes of th[e] motion"). Plaintiff's opposition brief fails to acknowledge any of the foregoing—likely another consequence of recycling a brief from a different case.

*Second*, despite arguing that claim construction of "searching event" and "processing device" is necessary before Defendant's motion can be resolved, Plaintiff never once cites its

3

proposed claim constructions in its opposition brief.[1]  Merely raising the specter of claim construction without developing any actual arguments as to how those constructions are relevant (particularly when Defendant has accepted and applied Plaintiff's flawed constructions for purposes of this motion) is insufficient to defeat a motion to dismiss.

### B.   The Allegations from the Complaint Are Conclusory And Unsupported

Plaintiff block-quotes large swaths of the Complaint, in an attempt to create the impression that there are factual disputes that cannot be resolved at the pleading stage.  (*See* Dkt. No. 12 at 3-7.)  According to Plaintiff, the "Court is required by law . . . to accept all factual allegations in the operative Complaint as true."  (Dkt. No. 2.)  Not so.  When considering a Section 101 motion to dismiss, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (citation omitted).  In particular, allegations about inventiveness that are "wholly divorced from the claims or the specification" cannot defeat such a motion.  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).  The Court need not blindly accept all statements in the Complaint as true—particularly when those statements find no support in the intrinsic record.

Moreover, the Complaint's allegations are distinguishable from those that led Judge Payne to recommend denial of a motion to dismiss in *AlexSam, Inc. v. Cigna Corp.*, No. 2:20-cv-00081-JRG-RSP, 2020 WL 7233403, at *4-5 (E.D. Tex. Oct. 26, 2020) (cited by Plaintiff at Dkt. No. 12 at 2.)  In that case, the "complaint, as well as the attachments to the complaint, repeatedly and consistently describe[d] the Processing Hub as a ***new piece of equipment that the inventor***

---

[1]  As noted in the parties' Joint Letter Submitted Pursuant to Standing Order Regarding Motions Under 35 U.S.C. § 101, Plaintiff's proposed claim constructions improperly rewrite claim language, but Defendant has accepted these improper constructions strictly for purposes of this motion.  (Dkt. No. 11 at 3-5.)

*created* and which led to an improvement in the way computers work." *Id.* at *4 (emphasis added). Here, Plaintiff's Complaint (which includes no attachments—not even the GGS Patents or their file histories) does not allege that Mr. Joao invented a new piece of equipment; on the contrary, it alleges only that the preexisting functions of off-the-shelf processors, transmitters, and receivers could be used to allow for "bi-directional communications among employers and individuals." (Dkt. No. 12 at 5-6.)

At multiple points in its opposition, Plaintiff repeats the contention that "the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art as of July 1999." (Dkt. No. 12 at 2, 14.) But that is untrue—the GGS Patents establish that the claimed subject-matter was well-understood, routine, and conventional both with regard to job searching and scheduling, as well as with regard to computer network technology. The GGS Patents state that they are "directed to" replicating conventional "job searching services" that have long been performed by "so-called 'headhunters,'" including "*establishing a dialog* between parties reaching agreement on, and/or establishing an employment . . . relationship." (Ex. A at 1:16-23; 1:49-58 (emphasis added).) The GGS Patents merely use a conventional central processing computer (i.e., "a network computer or computer system . . . such as an Internet server computer and/or a web site server computer," *id.* at 13:62-14:5) to establish the *same sort of dialog* (i.e., what Plaintiff calls "bi-directional communications") between, for instance an "individual computer [that] can be a personal computer" and an "employer computer [that] can be a personal computer" (*id.* at 12:48-58, 13:1-11). The GGS Patents thus provide all the record needed to resolve this motion.

## II. THE REPRESENTATIVE CLAIMS ARE UNPATENTABLE

### A. The Representative Claims Fail *Alice* Step 1

In its opening brief, Defendant noted that the Work Scheduling Claims are directed to the abstract idea of storing and exchanging information to schedule a job, while the Job Search Claim is directed to the abstract idea of storing and exchanging information relating to a job search. (Dkt No. 8 at 4-7.) Plaintiff does not specifically respond to Defendant's proposed distillation of the claimed subject-matter, but instead offers an alternative distillation that lumps together all claims: "a system that allows for bi-directional communications among employers and individuals without the need to obtain introductions or rely on interpersonal relationships, and that utilizes a clearinghouse central processor located such that it can be updated via inputs from both the employer and individual job seeker or independent contractor." (Dkt. No. 12 at 8.) This formulation, while failing to reflect the distinct categories of claims at issue (i.e., the Work Scheduling Claims vs. the Job Search Claim), is equally abstract.

The specification explains that the term "bi-directional communications" simply refers to two conventional computers talking to one another over an established network: "[t]he central processing computer(s) **10**, the individual computer(s) **20** and/or the employer computer(s) **30** can communicate with one another, and/or be linked to one another, over a communication network and/or a wireless communication network," such as "the Internet and/or the World Wide Web." (*Id.* at 13:12-46.) As noted above, the processor is a conventional system that is used to access the Internet and/or World Wide Web, i.e., a generic "Internet server computer and/or a web site server computer." (Ex. A at 13:62-14:5.) Plaintiff's alleged inventive concept is therefore nothing more than a description of how computers have accessed and communicated over the Internet long before the alleged invention of the GGS Patents.

6

Indeed, the Federal Circuit has recognized that bi-directional computer communications are an unpatentable abstract idea. In *Secured Mail*, the Court affirmed the grant of a motion to dismiss because the claims of seven asserted patents were directed to "the abstract idea of communicating information about a [mail object] by use of a marking." 873 F.3d at 909. Similar to Plaintiff's arguments here, the *Secured Mail* patentee argued that the claims were non-abstract because they "permit[ed] the sender to create ***a bi-directional communication channel*** between the sender and recipient of the mail object." *Id.* at 910 (emphasis added). The Federal Circuit rejected this argument, holding that a "'bi-directional communication line' . . . has long been a conventional concept."[2] *Id.* at 912. Indeed, the use of computers as a bi-directional communication line that confidentially connected two individuals is familiar to anyone who has seen the 1998 film "You've Got Mail." The premise of that film was that two individuals were bi-directionally communicating through a central processing system (i.e., AOL processing servers like those disclosed in the GGS Patents) anonymously through their respective computers, as exemplified by the below screenshots:



Plaintiff's alleged formulation of the Asserted Claims simply applies the sort of conventional "bi-directional communications" that sparked an unlikely romantic connection in "You've Got Mail"

---

[2] Plaintiff repeatedly emphasizes that the GGS Patents have a priority date of 1999; but the patents at issue in *Secured Mail* had a similar priority date (of 2001). Many patents directed to computer-based technology with early priority dates have nonetheless been invalidated under Section 101; for instance, the patents-at-issue in *Alice* had a priority date of 1993. *See, e.g.*, *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 212 n.1 (2014). Indeed, the other Joao patents that have been invalidated under Section 101 had even earlier priority dates. *See, Joao*, 76 F. Supp. 3d at 515 (invalidating Joao patents with a priority date of 1996).

to facilitate a job-related connection, using the same computer components that were portrayed on screen. Merely applying conventional computer capabilities (i.e., bi-directional communications from multiple user inputs) to a particular field (such as job searching and scheduling) is the quintessential unpatentable abstract idea, as at least one district court recognized just two weeks ago in an analogous case. *People.ai., Inc. v. SetSail Techs., Inc.*, No. C 20-09148 WHA, 2021 WL 5882069, at *4 (N.D. Cal. Dec. 13, 2021) (granting judgment on the pleadings where the asserted claims recited the use of "processors" programmed to "do little else than [perform] a common commercial practice long performed by humans" while "limiting the claims to a particular technological environment, like CRM management"). Thus, even if the GGS Patents were the first time anyone ever suggested using these conventional computer capabilities in the particular "technological environment" of job scheduling and searching, the Asserted Claims would still be directed to unpatentable subject-matter. *See id.*

Indeed, the very caselaw Plaintiff cites confirms the abstract nature of its own proposed formulation of the claims. Plaintiff cites several of what it calls "DDR Holdings Cases," which it attempts to distinguish on the basis that "[t]he Asserted Claims utilize an unconventional specialty [*sic*] programmed processor." (Dkt. No. 12 at 9-10.) But neither the specification nor the claims discloses any special programming that would be necessary for a processor to connect two computers and allow them to bi-directionally communicate—and neither Plaintiff's Complaint nor its opposition explains what special programming would be necessary to perform this most conventional of functions for a generic "Internet server computer and/or a web site server computer." (Ex. A at 13:62-14:5.) In other words, Plaintiff is describing the inherent capabilities of any Internet server computer or web site computer; if they were not capable of bi-directional communications, then they could not be "Internet server computer[s]."

As noted above, Plaintiff's proposed constructions for "processing device" and "searching event" likewise provide no basis to conclude that the claims are non-abstract. Plaintiff defines a "processing device" as "a processor programmed to perform a job search upon detection of an occurrence of a searching event," and a "searching event" is defined as essentially any event that might trigger a job search, such as an online job posting. (Dkt. No. 11 at 2.) In other words, this "specialty [*sic*] programmed processor" is merely a processor that is designed to perform a job search when a job is posted. This is not a special-purpose computer; it is a generic computer doing the sort of thing that computers have always done. Indeed, the Asserted Claims fall squarely within several of the "DDR Holdings Cases" Plaintiff cites; each of those cases involves the sort of programming Plaintiff would call "specialized," but in no instance was that enough to save the claims. *See, e.g.*, *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345-46 (Fed. Cir. 2013) (concluding that even "very detailed software implementation guidelines" were insufficient because the computer components were used in conventional ways to perform "generalized steps of generating a task in response to events," much as Plaintiff here claims that the processor is generating a job search in response to a searching event); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715-16 (Fed. Cir. 2014) (claims directed to a computer programmed to implement a multi-step method of "offering free media in exchange for watching advertisements" was abstract); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (affirming that a computer-implemented method of providing "a third party guarantee of a sales transaction" required no specialized programming and was thus abstract).

### B.     The Representative Claims Fail *Alice* Step 2

Defendant noted in its opening brief that Plaintiff's Complaint never articulates what inventive concept in the Asserted Claims allegedly satisfies *Alice* Step 2. (Dkt. No. 8 at 25-26.) Neither does Plaintiff's opposition. Instead, Plaintiff repeats its untenable allegation that the

9

processing device is a specialized computer because it "allows for direct or indirect bi-directional communication." (Dkt. No. 12 at 12.) But as discussed above, nothing could be less specialized than a processor that enables communications between two computers.

Plaintiff's Step 2 arguments rest primarily on its contention that the Asserted Claims pass the machine-or-transformation test. They do not. To meet the "machine" prong of the test, "the subject patent must disclose the use of an apparatus specific to the claimed invention." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1019 (Fed. Cir. 2017) (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014)). The generic processing device of the GGS Patents is not specific to the claimed invention; as Defendant noted in its opening brief, the "processing" element of the claimed invention "can be any suitable computer, network computer, or computer system." (Ex. A at 12:19-26; *see also id.* at 14:2–5 (disclosing that the processor can be "a microcomputer, a minicomputer, a macro-computer, and/or a mainframe computer, depending upon the application").) Moreover, "[w]hile the Supreme Court has explained that the machine-or-transformation test can provide a 'useful clue' in the second step of *Alice*, passing the test alone is insufficient" to satisfy step two. *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 980 (Fed. Cir. 2020).

### III.   CONCLUSION

Calling bi-directional computer communications unconventional does not make it so—particularly when the Federal Circuit has already concluded otherwise. Calling a processor that the specification defines exclusively as a generic and conventional web server does not a specialized computer make. And disparaging Defendant's motion as a "customary boilerplate argument"—when Plaintiff merely re-filed an earlier, non-responsive opposition with only superficial changes—is not sufficient to survive this motion to dismiss. Defendant's motion should therefore be granted, and Plaintiff's Complaint should be dismissed with prejudice.

DATED:  December 27, 2021                                      Respectfully submitted,

                                                                  /s/ *Amanda A. Abraham*_____

| | |
|---|---|
| Douglas R. Nemec (*pro hac vice*) | Amanda A. Abraham |
| Edward L. Tulin (*pro hac vice*) | Texas State Bar No.: 24055077 |
| Skadden, Arps, Slate, | Roth & Abraham Law Firm |
| Meagher & Flom LLP | 115 N. Wellington St., Ste. 200 |
| One Manhattan West | Marshall, TX 75670 |
| New York, NY 10001 | 903-935-1665 |
| Tel: (212) 735-3000 | aa@rothfirm.com |
| douglas.nemec@skadden.com | |
| edward.tulin@skadden.com | *Attorneys for Defendant East Texas Border Health Clinic d/b/a Genesis Primecare* |

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2021, I caused a true and correct copy of the foregoing to be served by email upon counsel of record listed via the Court's electronic filing system.

Dated:  December 27, 2021                         /s/ *Amanda A. Abraham*_____
                                                                         AMANDA A. ABRAHAM